IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORION DOUGLAS MEMMOTT,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF SOCIAL SERVICES, LINCOLN COUNTY, et al.,<br><br>Defendants. | No.  2:23-CV-2383-DAD-DMC<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the Court is Defendant's motion to dismiss, ECF No. 26.  Plaintiff filed an opposition, ECF No. 30, and Defendants filed a reply, ECF No. 33.

**I. PLAINTIFF'S ALLEGATION**

This action proceeds on Plaintiff's first amended complaint, which Plaintiff filed as a right. See ECF No. 5. Plaintiff identifies thirty-three potential Defendants, including ten yet to be identified social workers and/or employees of the Lincoln County Department of Social Services in North Carolina (LCDSS). See ECF No. 5, pg. 2. Plaintiff alleges specific actions taken by the following Defendants: (1) the Department of Social Services of Lincoln County,

1

North Carolina ("LCDSS"); (2) Bonnie Manning[1]; (3) LCDSS Social Worker Kelly Pendleton; and (4) LCDSS legal counsel Jessica Fielding Yelverton. See id. Plaintiff claims all other Defendants were "directly involved." See id. at 25-28.

The complaint involves two minors: R.H. and F.H., who were thirteen and six years old, respectively, at the time of the amended complaint. See id. at 5. Plaintiff is the stepfather of the children's mother, Amanda, and, according to Plaintiff, has acted in loco parentis for R.H. and F.H. since birth. See id. Plaintiff asserts he is a non-relative extended family member, with a kinship bond to the children as he is the only father figure they have ever known. See id.

Plaintiff contends that when R.H. was two and a half years old, Amanda signed a document transferring all of Amanda's parental rights to Plaintiff and his then wife, Donna Harris. See id. at 6. Plaintiff and Donna then formalized that arrangement by seeking guardianship of R.H.; however, because of the age difference between Plaintiff and Donna, Donna became R.H.'s legal guardian. See id. Sometime later, Amanda signed a second document, verifying that Plaintiff had full custody of R.H. and complete authority over decisions relating to R.H.'s medical, educational, and welfare needs. See id. According to Plaintiff, after the couple's amicable divorce, Donna agreed Plaintiff should maintain care and custody R.H.. See id.

At some later date, Donna, Amanda, and the two children moved to North Carolina. See id. at 7. Plaintiff contends that during that time he maintained "long range supervision, with daily virtual contact, and very frequent visits" with R.H. Id. Plaintiff asserts Donna later discovered Bonnie,[2] Daniel Koehler, and their attorney, defrauded Donna regarding the North Carolina property she had purchased, leading to conflict. See id. In 2023, in the middle of that conflict, Bonnie's dog bit F.H. and had to be put down. See id. Plaintiff asserts that this led to Bonnie making a false accusation against Amanda to Defendant Kelly Pendleton, a social worker with LCDSS, alleging F.H. was being neglected and abused. See id. As a result, LCDSS opened a Child Protective Service (CPS) investigation of Plaintiff, Amanda, Donna, and F.H. See

---

[1] Plaintiff names Bonnie Manning as Defendant but within the complaint, Plaintiff names Bonnie without any last name. The Court assumes that allegations involving "Bonnie" are referring to Bonnie Manning.

[2] The Court assumes that "Bonnie" is the named Defendant Bonnie Manning.

2

1 | id.

2 | Plaintiff contends that during the investigation, on March 9, 2024,[3] and April 3,
2024,[4] respectively, R.H. and F.H. returned to California where Plaintiff resumed physical custody and care of the two children. See id. at 8. After which, on April 5, Defendant LCDSS confirmed the children had returned to California and were well and safe in Plaintiff's care via a video call. See id. Plaintiff contends that, at the time, Defendant LCDSS determined no child protective services were necessary and the case would be closed. See id. According to Plaintiff, on April 6, 2023, LCDSS issued a letter stating that after completing the family assessment, no services were needed, and the case would be closed regarding R.H. and F.H.. See id. Plaintiff contends LCDSS's determination was in accordance with the law because of the children's kinship bond to Plaintiff. See id. at 8-9.

Plaintiff claims that six days after issuing the letter stating that Defendant LCDSS had determined there was no need for CPS services, Defendant LCDSS kidnapped the children from Plaintiff. See id. at 12. Plaintiff further claims that each Defendant caused or participated in the abduction of the children from Plaintiff's home in California on April 12, 2023, the transfer of the children to North Carolina on April 18, 2023, and the placement of both children in foster homes immediately thereafter. See id. Plaintiff alleges Defendants Hillman, Yelverton, Pendleton, Kelly, Miles, Black, Hauser, Whitesides C. Hoyle, S. Hoyle, Eaddy, Ingram, and Davis conspired to lie and abduct the children. See id.

Plaintiff specifically asserts that Defendant LCDSS and conspirators contacted Butte County, California, Department of Social Services (BCDSS), and demanded BCDSS remove F.H. from Plaintiff's custody. See id. BCDSS then conducted a Field Safety Plan, confirming both children were in Plaintiff's custody but did not remove the children. See id.

Plaintiff claims that after failing to obtain a custody order from a North Carolina court or the assistance of BCDSS, Defendant LCDSS and conspirators then went to the Lincoln County, North Carolina, Sheriff's Office and made a false accusation that Plaintiff had kidnapped

---

[3] Plaintiff states 2024; however, this may be in error as dates that follow are in 2023.
[4] Plaintiff states 2024; however, this may be in error as dates that follow are in 2023.

3

F.H. See id. at 13-14. Plaintiff further claims Defendant LCDSS and conspirators made this accusation just after they had confirmed the children were both well and safe in Plaintiff's care and custody earlier that same day via telephone. See id. at 15. Plaintiff asserts that as a result of this accusation, the Lincoln County, North Carolina, Sheriff's Office issued a false Amber Alert broadcasting that Plaintiff had F.H. See id.

Plaintiff then asserts that on April 12, 2024, at about 11:00 pm, Plaintiff, in the presence of approximately fifteen California law enforcement officers, was arrested in front of the children. See id. Plaintiff contends that Defendant LCDSS and other unnamed Defendants lied to social workers of the Colusa County, California, Department of Social Services (CCDSS), resulting in CCDSS's taking of the children. See id. at 16. Plaintiff contends that Defendant LCDSS then arranged for the children to be brought back to North Carolina while both Plaintiff and Donna were falsely imprisoned. See id. at 17.

Plaintiff asserts there was no legal basis for Defendant LCDSS to take R.H. because Defendant Yelverton confirmed that Donna had letters of guardianship for R.H. before sending R.H. to live with Plaintiff. See id. at 17-18. Plaintiff asserts he was never charged with a crime and was released from jail the day after being incarcerated. See id. at 18. Plaintiff further contends that since removing the children, LCDSS has prevented the children from leaving North Carolina and denied Plaintiff any contact. See id. at 19.

Plaintiff asserts that as a custodial non-relative extended family member with a kinship bond to the children, Plaintiff is entitled custody of the children and has standing to bring this lawsuit for violation and deprivation of Plaintiff's statutory and constitutional rights. See id. at 10. Plaintiff further claims that the LCDSS's determination that the children were well and safe in Plaintiff's care and custody in California on April 6, 2023, has never been reversed or withdrawn by the LCDSS, nor has the determination been challenged by the LCDSS or any other person or entity in court. See id. According to Plaintiff, there is no on-going action challenging LCDSS's April 6, 2023, determination and thus, Plaintiff's legal rights to custody of the children is in full force and effect. See id. at 11. Plaintiff further asserts Butte County, California, Department of Social Services found Plaintiff to be a fit parent entitled to care and custody of the

4

children on April 7, 2023. See id.

Plaintiff raises six causes of action. Claim One is intentional infliction of emotional distress on Plaintiff by issuing a false Amber Alert; arresting, booking, and incarcerating Plaintiff; and unlawfully depriving Plaintiff of custody of the children. See id. at 32-38. Claims Two and Three allege that Defendants defamed Plaintiff and cast him in a false light by falsely claiming that Plaintiff abducted the children when they issued the Amber alert. See id. at 38-39. Claims Four and Five allege "Denial of the Right to Due Process" and "Violation of 42 U.S.C. § 1983," respectively. Id. at 40. Claim Six alleges tortious interference with custodial rights based on Defendants' actions in depriving Plaintiff of custody of the children. See id. at 42-43. Plaintiff seeks monetary damages totaling fifty million dollars ($50,000,000.00) and any other relief to the extent permitted by law that the court deems just and proper. See id. at 43-44.

## II. DISCUSSION

Defendants Department of Social Services of Lincoln County, North Carolina, Department of Social Services of Lincoln County, North Carolina, Lincoln County, North Carolina, Chrystal Hoyle, Sherry Hoyle, Jill Eaddy, Daphne Ingram, Cathy Davis, Matt Matthew Hillman; Kelley Miles; Jessica Fielding Yelverton; Kelly Pendleton; Mendie Kelly; Allison Black; Sandy Houser; Lauren Whitesides; April Gullate; Brittany Deal; Jason Hughes; Ashley Wesson; Brenda Kelly-Kerby, and Melinda Carroll Lykins (herein "Defendants") filed a joint motion to dismiss. See ECF No. 26. Defendants assert that this Court lacks personal jurisdiction over the Defendants and therefore, the action should be dismissed. See id. at 6-9. Second, Defendants contend that the Eastern District is an improper venue, and the Court should dismiss this case for improper venue or transfer the case to the Western District of North Carolina. See id. at 9-12.

As a preliminary matter, Plaintiff asserts that Defendants have violated the Federal Rules of Civil Procedure by filing a motion to dismiss on behalf of all Defendants, rather than individual motions for each Defendant. See ECF No. 30, pgs. 31-33. Though Plaintiff did not file a motion to that effect, the Court does not find Defendants violated the Federal Rules of Civil

5

1  Procedure by filing a joint motion to dismiss and therefore, will consider Defendants' motion.

2

3       **A.**     **Personal Jurisdiction**

4           1.     Defendants' Motion to Dismiss

5           Defendants filed a motion to dismiss on May 8, 2025. See ECF No. 26.

6  Defendants attach an affidavit from Defendant Hillman in support of the motion to dismiss. See

7  ECF No. 26-1. Defendants assert that this Court lacks personal jurisdiction over every Defendant

8  and, even if the Court does have jurisdiction over the Defendants, North Carolina is the proper

9  venue for this suit. See ECF No. 26 at 6. Defendants contend that Plaintiff "cannot establish

10  general or specific personal jurisdiction here." Id. at 7. Defendants assert that the Court lacks

11  general jurisdiction over every Defendant because none of them are a resident of California and

12  they all work outside of California. Id. at 7-8.

13           As to specific jurisdiction, Defendants contend that the alleged actions were not

14  "purposefully directed" to California. Id. at 8. According to Defendants, the alleged phone call

15  with Plaintiff was the only action that could possibly be considered "aimed at California," but

16  even that call is insufficient. Id. Additionally, Defendants contend that though Plaintiff's

17  allegations arise from a North Carolina nonsecure custody order, "defendants did not aim the

18  nonsecure custody order at California." Id.

19           Next, Defendants contend that "Plaintiff's claims also do not relate to any

20  California based activity." Id. at 9. Defendants assert that what Plaintiff calls the "false amber

21  alert," was really a nonsecure custody order which arose from a dispute in North Carolina. Id.

22  Additionally, Defendants contend that while Plaintiff alleges that he was injured in California,

23  that is insufficient to establish jurisdiction. See id. Finally, Defendants argue it would be

24  unreasonable for the Court to exercise jurisdiction over Defendants, stating: "[t]o force nineteen

25  North Carolina residents to defend actions taken in their home state while working for a county

26  government in a court more than 2,600 miles away is unreasonable." Id.

27  / / /

28  / / /

///

### 2. Plaintiff's Opposition

Plaintiff filed opposition to the motion to dismiss on June 23, 2025. See ECF No. 30.[5] Much of the opposition refutes how Defendants characterize the alleged actions and repeats the allegations in the amended complaint. See id. Plaintiff provides some additional facts that speak to personal jurisdiction:

> Defendants' improper request to a California agency, the Butte county, California, Department of Social Services, and the Chico, California, Police Department, and the Butte County, California, Sheriff to remove the children from Plaintiff's care and custody and hold them until the Lincoln County Department of Social Services could come and get them; the defendants' false accusations against Plaintiff to the California Highway Patrol, the Colusa County, California, Sheriff, and the Williams, California, City Policy Department, which resulted in Plaintiff's false arrest and Plaintiff's incarceration in the Colusa County, California jail; the defendants' improper request, as a sister agency, to the Colusa County, California, Department of Social Services to remove the children from Plaintiff's care and custody and to hold them until the Lincoln County Department of Social Services could come and get them; the defendants' petition filed in the Colusa County, California, Superior Court, and the perjury in that court to obtain an order to transfer the kidnapped children to the custody of Lincoln County Department of Social Services; Lincoln County Department of Social Services social workers coming to California to abduct the children and purjure [sic] themselves in the California Superior Court and to transport the children from California to North Carolina; and, of course, the defendants' actual abduction of the children from Plaintiff, who the defendants had caused to be unjustly arrested in California, and then the transporting of the children from California to North Carolina.

ECF No. 30, pgs. 25-26.

Plaintiff then argues that jurisdiction is proper, and the Eastern District is a proper venue because "every action of the Defendants of which Plaintiff has complained took place in Northern California." Id. at 30-31.

### 2. Legal Standard

A party may move to dismiss a suit for lack of personal jurisdiction under Rule 12(b)(2). To defeat a Rule 12(b)(2) motion, the plaintiff must make a prima facie showing of jurisdictional facts sufficient to establish that jurisdiction is proper. Mavrix Photo, Inc. v. Brand Tech., Inc. 647 F.3d 1218, 1223 (9th Cir. 2011). Here, where there is no applicable federal statute

---

[5] Plaintiff requested an extension of time to file his opposition since the time for such opposition had passed. See ECF No. 31. The Court granted the extension. See ECF No. 32.

governing personal jurisdiction, the Court applies the law of California. Id. Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. Id. (citing Cal. Civ. Proc. Code § 410.10). For this Court to exercise personal jurisdiction consistent with due process, the defendant must have "minimum contacts" with this forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal citations omitted). A court may exercise either general or specific jurisdiction over a defendant. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919-20, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011).

A court has general jurisdiction over a party whose "continuous operations within a state [are] so substantial and of such a nature as to justify a suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318. This is a very exacting standard that requires Defendant's activities in California be "so continuous and systematic as to render [it] essentially at home" in the state. Goodyear Dunlop Tires, 564 U.S. at 919.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires, 564 U.S. at 919. The Ninth Circuit uses a three-prong test for determining specific jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). First, the nonresident defendant "must purposefully direct its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Id. Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." Id. And finally, "the exercise of jurisdiction must comport with fair place and substantial justice such that it is reasonable." Id. The plaintiff bears the burden of satisfying the first two prongs of the test. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).

A defendant has the burden to show that, despite the first prongs being satisfied, exercising such jurisdiction would be unreasonable. Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The Ninth Circuit provides seven factors to determine if exercising jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.
>
> Dole Food, at 1114 (citing Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995)

3.   Analysis

The Court finds, for the reasons explained below, that Plaintiff alleges sufficient facts to establish personal jurisdiction but fails to explicitly link named Defendants to these actions. Therefore, the undersigned will recommend Defendants' motion to dismiss be granted as to personal jurisdiction and Plaintiff be provided leave to amend.

a.   *General Jurisdiction*

The Court finds that there is no general jurisdiction over Defendants. Defendants are not residents of California, they do not work in California, and Plaintiff does not argue that any Defendant is "essentially at home" in California.

b.   *Specific Jurisdiction*

First, the Court considers whether Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Schwarzenegger, at 802. Defendants argue that none of the actions alleged were targeting California. This Court disagrees.

Plaintiff alleges that Defendants contacted Butte County Police and Butte County Department of Social Services (BCDSS), "and demanded that BCDSS remove F.H. from Plaintiff's custody." ECF No. 5, pg. 12. Plaintiff further alleges that Defendants then contacted social workers in Colusa County and directed those social worked "to take (kidnap) F.H.." Id. at

9

15-16. Additionally, Plaintiff contends that "LCDSS personnel" lied to the Sherriff's office to induce them to take R.H. as well. Id. at 18. Further, Plaintiff alleges that "On April 12th, 2023, the LCDSS contacted the Amber Alert network and issued an EMA report that Plaintiff had abducted F.H." Id. at 38. The Amber Alert network functions by sending an urgent message and requires that the alert be sent to specific geographic area. Plaintiff contends that Valerie, a DOE Defendant, and Defendants Hillman and Yelverton had a call with Plaintiff on April 5, 2025. See id. at 8. Plaintiff alleges that Defendants developed contacts within California over the course of the alleged actions – contacts with BCDSS, social workers in Colusa County, and five California law enforcement agencies. See ECF No. 30, pg. 25.

        Assuming these allegations to be true, as appropriate at this stage, Defendants not only took actions targeted at California, but they also coordinated with and made use of California's law enforcement and other agencies to take actions within the state. In that way, the actions alleged fall squarely within the first prong, "invoking the benefits and protections of its laws." Schwarzenegger, at 802. The next consideration is whether the claim "arises out of or relates to the defendant's forum-related activities." Schwarzenegger, at 802. Plaintiff's claims all arise from their actions directed at California. Thus, the second prong is satisfied.

        Finally, the Court must consider if exercising jurisdiction is reasonable, guided by the seven factors provided by the Ninth Circuit. First, the Court finds that Defendants' "purposeful injection into the forum state's affairs," is extensive. Plaintiff alleges that Defendants directed California state agencies to take actions that expended California resources to arrest a California resident and remove two children from California. See id. at 8. Second, Defendants are correct that this forum is almost 3,000 miles from their residence and therefore, there is a great burden on Defendants to defend here. Third, there exists an obvious conflict of sovereignty in that Plaintiff alleges that custody determinations by different jurisdictions impacted the alleged events and Plaintiff contends that Defendants lied to California agencies to effectuate an arrest by California law enforcement. Fourth, California has a strong interest in adjudicating these claims because of the implications of another state making use of, and coordinating with, California law enforcement and social service agencies to act on their behalf. As to the fifth factor, efficient

judicial resolution, this factor weighs in neither direction because it does not appear that this Court would be more or less efficient in resolving this case than another jurisdiction. Sixth, the forum is very important to Plaintiff as it is close to where he lived and where the actions occurred. And finally, this Court does not find there is an alternative forum that would allow Plaintiff to adjudicate these claims.

Taken together, this Court finds exercising jurisdiction may be reasonable. Defendants maintain that "all of the events relevant to Plaintiff's claim happened in North Carolina." ECF NO. 26, pg. 10. However, Plaintiff alleges that Defendants directed and coordinated action by California law enforcement and social services agencies from North Carolina. See ECF No. 5. Plaintiff repeatedly states that California authorities acted at the request of Defendants. See e.g. ECF No. 30 (California agencies acted "responding to a written request from the LCDSS" pg. 7) (Plaintiff's arrest and the seizure of R.H. and F.H. " 'stemmed from a North Carolina nonsecure custody order;'" pg. 13 quoting Defendants' affidavit)  ("LCDSS arranged with the California law enforcement agencies . . . and with the Colusa County, California, Department of Social Services . . ." pg. 14). Defendants have the burden of showing that exercising jurisdiction would be unreasonable and Defendants themselves appear to concede that at least some actions taken by California authorities were at the direction of Defendants. See e.g. ECF No. 26-1, pg. 4 ("LCDSS successfully moved for a nonsecure custody order . . . and sent that order to Butte County, California . . . LCDSS sought the assistance of social service authorities in Butte County, California"); (Defendants Kelly, Jimenez, Pendleton, Yelverton and Hillman had a phone call with Plaintiff where they requested Plaintiff return F.H. to California authorities); ("Plaintiff was arrested by California authorities pursuant to the North Carolina warrant").

Individuals cannot shelter themselves with claims of lack of personal jurisdiction by directing actions by local agencies. As previously stated, Plaintiff alleges that Defendants made use of California law and agencies and Defendants appear to concede that point. Such use would make it reasonable for California to exercise personal jurisdiction over Defendants.

///

          c.      *Allegations as to Specific Defendants*

Though Plaintiff generally asserts claims that could give rise to personal jurisdiction over Defendants, Plaintiff fails to specify which actions were taken by named Defendants. This Court finds that is insufficient to establish personal jurisdiction.

Plaintiff makes general assertions about named defendants, such as stating that Defendants "have been directly involved." ECF No. 5, pg. 27. These vague, general assertions are not sufficient to establish personal jurisdiction. However, as the previous analysis demonstrates, this Court finds that the allegations are the kind that could give rise to personal jurisdiction, if Plaintiff specified what actions were taken by which Defendants and the facts provided for finding jurisdiction. Thus, the undersigned will therefore recommend Defendant' motion to dismiss be granted as to personal jurisdiction and Plaintiff be provided leave to amend.

**B.**    **<u>Venue</u>**

Defendants argue that the Eastern District of California is an improper venue and therefore, the Court should dismiss this action or transfer the matter to the Western District of North Carolina. Id. at 9-11. According to Defendants, "[a]ll the events relevant to Plaintiff's claim happened in North Carolina. The "false" amber alert and custodial determinations happened in North Carolina." Id. at 10. According to Defendants, the only act any Defendant took in California was the April 5, video call that included an LCDSS employee named Valerie. See id. Defendants assert "California authorities arrested Plaintiff and took the children from his custody." Id. Defendants additionally cite to Colusa County Superior Court Judge Elizabeth Ufkes Olivera's April 17, 2023, decision to cede jurisdiction over R.H. to North Carolina, explaining it was the "most appropriate forum." Id. (citing 26-1, pg. 5).

As previously stated, Plaintiff repeatedly asserts that Defendants made use of California law enforcement and agencies to effectuate their actions. Plaintiff alleges that Defendants orchestrated the actions of authorities within the Eastern District and therefore, this Court finds that the Eastern District is a proper venue and will recommend Defendants' motion to dismiss as to venue be denied.

### III. CONCLUSION

The Court has recommended that Plaintiff be granted leave to file amended complaint. If the recommendation is adopted and Plaintiff is granted leave to file an amended complaint, Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

/ / /

1    If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Based on the foregoing, the undersigned recommends as follows:

1. It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 26, be GRANTED as to personal jurisdiction and DENIED as to improper venue; and

2. It is RECOMMENDED that Plaintiff's first amended complaint be DISMISSED with LEAVE TO AMEND.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 20, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE