**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORION DOUGLAS MEMMOTT, | No.  2:23-CV-2383-DAD-DMC |
| Plaintiff, | |
| v. | ORDER |
| DEPARTMENT OF SOCIAL SERVICES, LINCOLN COUNTY, et al., | and |
| | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the Court's Defendants' motion to dismiss for lack of personal jurisdiction and for failure to state a claim against immune defendants.  See ECF No. 43.  Plaintiff has filed an opposition.  See ECF No. 46.  Defendants have filed a reply.  See ECF No. 48.  Also before the Court are: (1) Plaintiff's motion to compel a scheduling conference and initial disclosures, see ECF No. 42; and (2) Plaintiff's motions for sanctions, see ECF Nos. 46 and 49, which are set for hearing on July 15, 2026.

A party may move to dismiss an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d. 797, 800 (9th Cir. 2004)

1

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). To establish personal jurisdiction, "[t]he plaintiff need only make a prima facie showing of jurisdictional facts." Id. In evaluating persona jurisdiction under Rule 12(b)(2), ". . . the court resolves all disputed facts in favor of the plaintiff." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint will be taken as true. Schwarzenegger, 374 F.3d at 800. The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit" but will "resolve factual disputes in the plaintiff's favor." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

A party may move to dismiss an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the Court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. BACKGROUND

Plaintiff initiated this action with a pro se complaint. See ECF No. 1. On August 29, 2024, the Court issued an order dismissing the complaint with leave to amend. See ECF No. 4. At the time, the Court found that the complaint was potentially barred under the Rooker-Feldman abstention doctrine and that Plaintiff lacks standing to assert claims on behalf of third parties. See id. Plaintiff was directed to file a first amended complaint. See id.

Plaintiff timely filed his first amended complaint. See ECF No. 5. The Court directed that the first amended complaint be served. See ECF No. 6. Following service of process, Defendants filed a motion to dismiss on May 8, 2025, arguing lack of personal jurisdiction and improper venue. See ECF No. 26. On August 20, 2025, the Court issued findings and recommendations that the motion to dismiss be denied as to personal jurisdiction, granted as to failure to establish a causal link between each defendant and specific actions about which Plaintiff complains and which establish personal jurisdiction, denied as to venue, and that Plaintiff be provided further leave to amend as to personal jurisdiction. See ECF No. 34. The findings and recommendations were largely adopted by the Distrct Judge. See ECF No. 39. In doing so, the District Judge stated:

> In light of the adoption of the recommendation of dismissal of the first amended complaint with leave to amend, the court need not further address at this time the analysis set forth in the pending findings and recommendations. Plaintiff is cautioned, however, that in any second amended complaint he may elect to file he should include all allegations he can in good faith assert with respect to the specific actions he claims each named defendant took in California which give rise to this action, including the details (date, time, place, etc.) surrounding those actions he alleges were taken in California.

> ECF No. 39, pg. 3, n.1.

/ / /

3

This action now proceeds on Plaintiff's second amended complaint filed on April 13, 2026.  See ECF No. 41.  Plaintiff's substantive allegations are the same as those set forth in the first amended complaint, which were summarized in the August 20, 2025, findings and recommendations as follows:

> . . .Plaintiff identifies thirty-three potential Defendants, including ten yet to be identified social workers and/or employees of the Lincoln County Department of Social Services in North Carolina (LCDSS). See ECF No. 5, pg. 2. Plaintiff alleges specific actions taken by the following Defendants: (1) the Department of Social Services of Lincoln County, North Carolina ("LCDSS"); (2) Bonnie Manning[1]; (3) LCDSS Social Worker Kelly Pendleton; and (4) LCDSS legal counsel Jessica Fielding Yelverton. See id. Plaintiff claims all other Defendants were "directly involved." See id. at 25-28.
>
> The complaint involves two minors: R.H. and F.H., who were thirteen and six years old, respectively, at the time of the amended complaint. See id. at 5. Plaintiff is the stepfather of the children's mother, Amanda, and, according to Plaintiff, has acted in loco parentis R.H. and F.H. since birth. See id. Plaintiff asserts he is a non-relative extended family member, with a kinship bond to the children as he is the only father figure they have ever known. See id.
>
> Plaintiff contends that when R.H. was two and a half years old, Amanda signed a document transferring all of Amanda's parental rights to Plaintiff and his then wife, Donna Harris. See id. at 6. Plaintiff and Donna then formalized that arrangement by seeking guardianship of R.H.; however, because of the age difference between Plaintiff and Donna, Donna became R.H.'s legal guardian. See id. Sometime later, Amanda signed a second document, verifying that Plaintiff had full custody of R.H. and complete authority over decisions relating to R.H.'s medical, educational, and welfare needs. See id. According to Plaintiff, after the couple's amicable divorce, Donna agreed Plaintiff should maintain care and custody R.H.. See id.
>
> At some later date, Donna, Amanda, and the two children moved to North Carolina. See id. at 7. Plaintiff contends that during that time he maintained "long range supervision, with daily virtual contact, and very frequent visits" with R.H. Id. Plaintiff asserts Donna later discovered Bonnie,[2] Daniel Koehler, and their attorney, defrauded Donna regarding the North Carolina property she had purchased, leading to conflict. See id. In 2023, in the middle of that conflict, Bonnie's dog bit F.H. and had to be put down. See id. Plaintiff asserts that this led to Bonnie making a false accusation against Amanda to Defendant Kelly Pendleton, a social worker with LCDSS, alleging F.H. was being neglected and abused. See id. As a result, LCDSS opened a Child Protective Service (CPS) investigation of Plaintiff, Amanda, Donna, and F.H. See id.

---

[1] Plaintiff names Bonnie Manning as Defendant but within the complaint, Plaintiff names Bonnie without any last name. The Court assumes that allegations involving "Bonnie" are referring to Bonnie Manning.

[2] The Court assumes that "Bonnie" is the named Defendant Bonnie Manning.

4

Plaintiff contends that during the investigation, on March 9, 2024,[3] and April 3, 2024,[4] respectively, R.H. and F.H. returned to California where Plaintiff resumed physical custody and care of the two children. See id. at 8. After which, on April 5, Defendant LCDSS confirmed the children had returned to California and were well and safe in Plaintiff's care via a video call. See id. Plaintiff contends that, at the time, Defendant LCDSS determined no child protective services were necessary and the case would be closed. See id. According to Plaintiff, on April 6, 2023, LCDSS issued a letter stating that after completing the family assessment, no services were needed, and the case would be closed regarding R.H. and F.H.. See id. Plaintiff contends LCDSS's determination was in accordance with the law because of the children's kinship bond to Plaintiff. See id. at 8-9.

Plaintiff claims that six days after issuing the letter stating that Defendant LCDSS had determined there was no need for CPS services, Defendant LCDSS kidnapped the children from Plaintiff. See id. at 12. Plaintiff further claims that each Defendant caused or participated in the abduction of the children from Plaintiff's home in California on April 12, 2023, the transfer of the children to North Carolina on April 18, 2023, and the placement of both children in foster homes immediately thereafter. See id. Plaintiff alleges Defendants Hillman, Yelverton, Pendleton, Kelly, Miles, Black, Hauser, Whitesides C. Hoyle, S. Hoyle, Eaddy, Ingram, and Davis conspired to lie and abduct the children. See id.

Plaintiff specifically asserts that Defendant LCDSS and conspirators contacted Butte County, California, Department of Social Services (BCDSS), and demanded BCDSS remove F.H. from Plaintiff's custody. See id. BCDSS then conducted a Field Safety Plan, confirming both children were in Plaintiff's custody but did not remove the children. See id.

Plaintiff claims that after failing to obtain a custody order from a North Carolina court or the assistance of BCDSS, Defendant LCDSS and conspirators then went to the Lincoln County, North Carolina, Sheriff's Office and made a false accusation that Plaintiff had kidnapped F.H. See id. at 13-14. Plaintiff further claims Defendant LCDSS and conspirators made this accusation just after they had confirmed the children were both well and safe in Plaintiff's care and custody earlier that same day via telephone. See id. at 15. Plaintiff asserts that as a result of this accusation, the Lincoln County, North Carolina, Sheriff's Office issued a false Amber Alert broadcasting that Plaintiff had F.H. See id.

Plaintiff then asserts that on April 12, 2024, at about 11:00 pm, Plaintiff, in the presence of approximately fifteen California law enforcement officers, was arrested in front of the children. See id. Plaintiff contends that Defendant LCDSS and other unnamed Defendants lied to social workers of the Colusa County, California, Department of Social Services (CCDSS), resulting in CCDSS's taking of the children. See id. at 16. Plaintiff contends that Defendant LCDSS then arranged for the children to be brought back to North Carolina while both Plaintiff and Donna were falsely imprisoned. See id. at 17.

Plaintiff asserts there was no legal basis for Defendant LCDSS to take R.H. because Defendant Yelverton confirmed that Donna had letters of guardianship for R.H. before sending R.H. to live with Plaintiff. See id. at 17-18. Plaintiff asserts he was never charged with a crime and was released from jail the day after being incarcerated. See id. at 18. Plaintiff further contends that since removing the children, LCDSS has prevented the

---

[3] Plaintiff states 2024; however, this may be in error as dates that follow are in 2023.
[4] Plaintiff states 2024; however, this may be in error as dates that follow are in 2023.

5

children from leaving North Carolina and denied Plaintiff any contact. See id. at 19.

Plaintiff asserts that as a custodial non-relative extended family member with a kinship bond to the children, Plaintiff is entitled custody of the children and has standing to bring this lawsuit for violation and deprivation of Plaintiff's statutory and constitutional rights. See id. at 10. Plaintiff further claims that the LCDSS's determination that the children were well and safe in Plaintiff's care and custody in California on April 6, 2023, has never been reversed or withdrawn by the LCDSS, nor has the determination been challenged by the LCDSS or any other person or entity in court. See id. According to Plaintiff, there is no on-going action challenging LCDSS's April 6, 2023, determination and thus, Plaintiff's legal rights to custody of the children is in full force and effect. See id. at 11. Plaintiff further asserts Butte County, California, Department of Social Services found Plaintiff to be a fit parent entitled to care and custody of the children on April 7, 2023. See id.

Plaintiff raises six causes of action. Claim One is intentional infliction of emotional distress on Plaintiff by issuing a false Amber Alert; arresting, booking, and incarcerating Plaintiff; and unlawfully depriving Plaintiff of custody of the children. See id. at 32-38. Claims Two and Three allege that Defendants defamed Plaintiff and cast him in a false light by falsely claiming that Plaintiff abducted the children when they issued the Amber alert. See id. at 38-39. Claims Four and Five allege "Denial of the Right to Due Process" and "Violation of 42 U.S.C. § 1983," respectively. Id. at 40. Claim Six alleges tortious interference with custodial rights based on Defendants' actions in depriving Plaintiff of custody of the children. See id. at 42-43. Plaintiff seeks monetary damages totaling fifty million dollars ($50,000,000.00) and any other relief to the extent permitted by law that the court deems just and proper. See id. at 43-44.

ECF No. 34, pgs. 1-5.

## II. DISCUSSION

Defendants argue that the Court lacks personal jurisdiction. See ECF No. 43. Defendants alternatively argue for the first time that, should the Court determine personal jurisdiction exists, they are immune. See id. Defendants no longer argue, as they did in their first motion to dismiss, that Plaintiff has failed to allege sufficient facts to establish how the Court has personal jurisdiction over each named defendant. In footnote 6 to the current motion to dismiss, Defendant also appears to request that the Court transfer this matter to a federal court in North Carolina. See id. at 15, n.6. This argument, however, is not fully briefed or currently before the Court on a formal motion to transfer.

///

///

6

A.     **Personal Jurisdiction**

To defeat a Rule 12(b)(2) motion arguing lack of personal jurisdiction, the plaintiff must make a prima facie showing of jurisdictional facts sufficient to establish that jurisdiction is proper.  See Mavrix Photo, Inc. v. Brand Tech., Inc. 647 F.3d 1218, 1223 (9th Cir. 2011).  Here, where there is no applicable federal statute governing personal jurisdiction, the Court applies the law of California.  See id. Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same.  See id. (citing Cal. Code Civ. Pro. § 410.10).  For this Court to exercise personal jurisdiction consistent with due process, the defendant must have "minimum contacts" with this forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citations omitted).  A court may exercise either general or specific jurisdiction over a defendant. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919-20 (2011).

A court has general jurisdiction over a party whose "continuous operations within a state [are] so substantial and of such a nature as to justify a suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318.  This is a very exacting standard that requires the defendant's activities in California be "so continuous and systematic as to render [it] essentially at home" in the state. Goodyear Dunlop Tires, 564 U.S. at 919.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires, 564 U.S. at 919.  The Ninth Circuit uses a three-prong test for determining specific jurisdiction.  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  First, the nonresident defendant "must purposefully direct its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Id. Second, "the claim must be one which arises out of or relates to the defendant's forum-related

7

activities." Id. Finally, "the exercise of jurisdiction must comport with fair place and substantial justice such that it is reasonable." Id. The plaintiff bears the burden of satisfying the first two prongs of the test. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).

A defendant has the burden to show that, despite the first prongs being satisfied, exercising such jurisdiction would be unreasonable. Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The Ninth Circuit provides seven factors to determine if exercising jurisdiction is reasonable: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. See Dole Food, at 1114 (citing Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995)).

In this case, it is clear that general jurisdiction does not exist because Plaintiff does not allege Defendants engaged in continuous operations in California which are so substantial as to subject them to suit arising from actions entirely distinct from such operations. The issue, then, is whether specific jurisdiction exists. According to Defendants:

> This case should never have been filed in California—and it certainly should not survive a third complaint. Plaintiff asks this Court to haul a North Carolina governmental entity and its employees more than 2,600 miles from their home state to answer for custody decisions they made in North Carolina, under North Carolina law, pursuant to North Carolina court orders. He cannot do so.

ECF No. 43, pg. 3.

More specifically as to specific jurisdiction, and referring to their prior motion to dismiss at ECF No. 26, Defendants argue:

> Defendants are all North Carolina residents who have minimal, if any, purposeful interjection into California. Requiring eighteen—and potentially twenty eight—North Carolina government employees to travel over 2,600 miles to defend actions taken in their home state while performing their official duties would impose a severe burden. See Doc. No. 26-1, ¶ 29. What is more, North Carolina has a strong sovereign interest in adjudicating claims arising from its own child welfare

8

> proceedings, while California's interest in this dispute is minimal—the underlying custody determinations were made under North Carolina law. *See Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 2383 (1979) (explaining that "[f]amily relations are a traditional area of state concern."). And an alternative forum plainly exists: North Carolina, where all Defendants reside, where all relevant evidence is located, and where the custody proceedings took place. *See* Doc. No. 26-1, ¶¶ 26, 28.

ECF No. 43, pg. 14.

As explained in the prior findings and recommendations addressing Defendants' first motion to dismiss, "Plaintiff alleges that Defendants contacted Butte County Police and Butte County Department of Social Services (BCDSS), 'and demanded that BCDSS remove F.H. from Plaintiff's custody.'" ECF No. 34, pg. 9 (quoting Plaintiff's first amended complaint). The Court added:

> Assuming these allegations to be true, as appropriate at this stage, Defendants not only took actions targeted at California, but they also coordinated with and made use of California's law enforcement and other agencies to take actions within the state. In that way, the actions alleged all squarely within the first prong, "invoking the benefits and protections of its laws." Schwarzenegger, at 802. The next consideration is whether the claim "arises out of or relates to the defendant's forum-related activities." Schwarzenegger, at 802. Plaintiff's claims all arise from their actions directed at California. Thus, the second prong is satisfied.

ECF No. 34, pg. 10.

The Court also determined that exercise of personal jurisdiction was reasonable. See id. at 10-12.

In summarizing the relevant facts, Defendants acknowledge that Plaintiff's allegations are substantially the same. Defendants state:

> In 2023, a dispute arose relating to the care of R.H. and F.H. *See* Doc. No. 26-1, ¶¶ 6-7. Lincoln County, North Carolina Department of Social Services ("LCDSS") thus began to investigate Plaintiff, Ms. Harris, and Ms. Harris' daughter. *Id.* ¶ 7. Yet in early April, Ms. Harris allowed Plaintiff to come to North Carolina and take F.H. back to California with him. *Id.* ¶ 11. R.H. was already living in California with Plaintiff. *Id.* Ms. Harris, however, did not have the authority to send F.H. to a known, but unrelated, individual in another state. And because of this unauthorized transfer of custody, LCDSS filed a non-secure custody order for legal and custody of F.H., which the court granted on April 6, 2023. *Id.* ¶ 12.
> On the same day, LCDSS sent a letter to Butte County CPS informing it of the situation and requesting that it go to Plaintiff's residence to serve him with the non-secure order. *Id.* Butte County social workers then went to Plaintiff's home, where Plaintiff agreed to return F.H. to LCDSS by 5pm on April 10, 2023. *Id.* ¶ 13. But Plaintiff failed to honor

9

this agreement despite attempts by LCDSS to negotiate the return of F.H over a telephone call. ¶ 15. Ultimately, on April 14, 2023, California authorities arrested Plaintiff and returned F.H. to North Carolina soon after. And three days later, Colusa County Superior Court Judge Elizabeth Ufkes Olivera ceded jurisdiction to North Carolina and R.H. and F.H. returned to North Carolina. *Id.* ¶ ¶ 17-19.

ECF No. 43, pgs. 4-5 (citing first motion to dismiss at ECF No. 26).

Given that the fundamental substantive and jurisdiction allegations remain unchanged, the Court finds, as it did with the prior motion to dismiss, that specific personal jurisdiction continues to reasonably exist.

The ultimate question becomes whether, consistent with the District Judge's order, Plaintiff has alleged facts specific to each named defendant to establish that defendant's connection with California.  The Court considers this question despite Defendants' failure to raise it in the current motion to dismiss and concludes that Plaintiff has done so as to some defendants and has not as to others.  In the second amended complaint, Plaintiff alleges:

> 63.     On the same day that the LCDSS [Lincoln County Department of Social Services] issued the letter closing the case, April 6, 2023, LCDSS social workers Pendleton and Kelly staffed up with the LCDSS Board of Directors, C. Hoyle, S. Hoyle, Ingram, and Davis, and the LCDSS staff, Black, Houser, Hughes, Whitesides, Kirby, Hillman, Miles, and Yelverton, and sent a fax from the BCDSS to the Butte County, California, Department of Social Services ("BCDSS"), accompanied by other documents and a letter to the BCDSS on LCDSS letterhead, which included the names of the LCDSS Director and the LCDSS Board of Directors and the acknowledgement and authorization of the LCDSS legal counsel.
>
> 64.     The fax, letter, and documents sent to BCDSS contained lies accusing plaintiff of abducting Faith and demanded that the BCDSS go to plaintiff's home in Chico, California, and remove Faith from plaintiff's custody.  The letter was authorized by LCDSS Director and the LCDSS Board of Directors, approved by the LCDSS legal counsel, and signed by two LCDSS social workers.
>
> 65.     LCDSS representatives, and Pendleton, and other unidentified LCDSS social workers who, on information and believe, were members of the LCDSS Cabal, after sending the fax, letter, and documents to the BCDSS in California, also made numerous telephone calls to BCDSS social works in California directing the BCDSS social workers to remove Faith from plaintiff's care and custody in his home in Chico, California. The members of the LCDSS Cabal "staffed up" prior to directing the transmission of the fax, letter, and documents to BCDSS.
>
> ECF No. 41, pgs. 21-22.

10

These allegations represent Plaintiff's contentions regarding the named defendants' contacts with California.  The Court finds that the allegations are sufficient to establish specific jurisdiction as to the following 16 named defendants:

- LCDSS

- Hillman (LCDSS Managing Director)

- Yelverton (LCDSS legal counsel)

- Pendleton (LCDSS social worker)

- Kelly (LCDSS Children's Services Program Manager)

- C. Hoyle (member LCDSS Board of Directors)

- S. Hoyle (member LCDSS Board of Directors)

- Ingram (member LCDSS Board of Directors)

- Davis (member LCDSS Board of Directors)

- Black (LCDSS Child Protective Services Supervisor)

- Houser (LCDSS Child Protective Services Supervisor)

- Hughes (LCDSS Children's Services Program Manager)

- Whitesides (LCDSS Child Protective Services Supervisor)

- Kirby (LCDSS social worker)

- Miles (LCDSS Deputy Director)

Plaintiff's jurisdictional allegations are not specific as to the other named defendants, who should be dismissed without further leave to amend for lack of personal jurisdiction.  Plaintiff conceded this point at the hearing on the pending motion to dismiss and agreed that dismissal of those defendants not listed above would be appropriate.

**B.      Immunity**

Defendants, for the first time in this second motion to dismiss, argue that they are immune.  See ECF No. 43, pgs. 15-17.  First, Defendants argue that they enjoy absolute or quasi- judicial and/or prosecutorial immunity.  See id. at 15-16.  Second, Defendants argue they are entitled to qualified immunity.  See id. at 16-17.

/ / /

11

1.    Judicial/Prosecutorial Immunity

Defendants contend:

Absolute immunity shields individuals from § 1983 liability if they perform a function that enjoyed absolute immunity at common law. *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir.2003). Officials acting in a prosecutorial or judicial role, or performing functions closely associated with the judicial process, are entitled to absolute immunity. *Id*. at 896–98. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

"[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). This immunity extends to a social worker's decision to remove a child from a parents' custody. *McKinney v. Washington*, 297 F. App'x 593, 595 (9th Cir. 2008); It also extends to actions of a DSS attorney, like defendant Jessica Yelverton. Doc. 41 ¶ 47J. *See Zayas v. Walton*, CASE NO. C22-18 MJP, 2022 WL 1468997, at *4 (W.D. Wash. May 10, 2022). All allegations in the Second Amended Complaint involve Defendants' conduct in removing R.H. and F.H. from his custody through a judicial process which started on April 5, 2023. *See* Doc. No. 41; *see also* Doc. No. 26-1. As a result, Defendants are absolutely immune from claims alleging that they were incorrect in their custodial decisions.

ECF No. 43, pgs. 15-16.

Assuming the facts alleged in the complaint are true, as the Court must in evaluating the immunity question under Rule 12(b)(6), Defendants' argument is not persuasive. Specifically, Plaintiff alleges that Defendants were doing more than simply carrying out court orders. Plaintiff contends Defendants conspired to fabricate false evidence in support of an effort to take custody. This goes well beyond the traditional prosecutorial or judicial role which would shield Defendants from liability.

2.    Qualified Immunity

Defendants argue:

If the Court determines that Lincoln County Defendants are not entitled to absolute immunity because their actions were neither advocatory or quasi-judicial, *Meyers*, 812 F.2d. at 1157-1158, they are entitled to qualified immunity. Qualified immunity shields federal and state officials from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether

12

the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (internal citations omitted) The Supreme Court has cautioned that clearly established law should not be defined at a high level of generality. *Id*. at 12. It is not necessary to find a case directly on point, "in which the very action in question has been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Placing an Amber alert on children who are thought to be stolen does not violate clearly established law, and Defendants are alternatively entitled to qualified immunity.

ECF No. 43, pgs. 16-17.

Again, Defendants' argument is not persuasive because it fails to acknowledge Plaintiff's allegations which must be accepted as true, specifically that Defendants engaged in a conspiracy and plan to fabricate false information in order to obtain custody.  The conduct of which Plaintiff complains goes far beyond simply "[p]lacing an Amber alert on children. . .," as Defendants contend.  While Defendants' version of events may ultimately prove true, assuming Plaintiff's version of events is correct, as the Court must under Rule 12(b)(6), it cannot be said at this time that Defendants are entitled to qualified immunity.

### III.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1.      It is ORDERED that Plaintiff's motion to compel a scheduling conference and initial disclosures, ECF No. 42, is denied as premature.

2.      It is RECOMMENDED that Defendants' motion to dismiss ECF No. 43, be granted in part and denied in part, specifically:

a.      Defendants' motion be denied as to immunities.

b.      Defendants' motion be granted as to lack of personal jurisdiction over the following defendants:  Jill Eaddy, April Gullate, Brittany Deal, Ashley Wesson, Ann Killian, Ann Payseur, Charles Bohlen, Norma Bohlen, and Melinda Carrol Lykins.

13

c.      Defendants' motion be denied as to lack of personal jurisdiction over all other named defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 30, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14